IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PACIRA BIOSCIENCES, INC., <br><br> Plaintiff, <br><br> v. <br><br> VENTIS PHARMA, INC., <br><br> Defendant. | Civil Action No. 23-1250-RGA |

MEMORANDUM ORDER

Before me is Defendant Ventis Pharma's motion to sever and transfer venue pursuant to 28 U.S.C. § 1404(a). (D.I. 27).[1] I have considered the parties' briefing. (D.I. 28, 46, 50). I heard oral argument on July 10, 2024.[2] For the reasons set forth below, Ventis's motion to transfer is GRANTED.

**I.   BACKGROUND**

Plaintiff and Ventis are pharmaceutical companies that focus on non-opioid pain management products. (D.I. 1 ¶¶ 5–6; D.I. 28 at 3). Plaintiff manufactures EXPAREL, which it calls "the first long-lasting non-opioid drug approved by the FDA to reduce post-surgical pain." (D.I. 1 ¶ 6). Ventis has developed Enduracaine, which it calls "a non-opioid and preservative-free local anesthetic compound product." (D.I. 28 at 3). Ventis is also a "logistics

---

[1] The parties have filed various other motions. Ventis filed a motion to dismiss (D.I. 22), Plaintiff filed a motion for a preliminary injunction (D.I. 13), and Ventis filed a motion for sanctions (D.I. 60).

[2] Citations to the transcript of the argument, which is not yet docketed, are in the format "Hearing Tr. at __."

1

administrator" for Nubratori, an outsourcing facility that manufactures the drug Endura-KT. (*Id.*).

Plaintiff filed its Complaint on November 1, 2023, alleging that Ventis and InfuSystem Holdings violated the Lanham Act by making false and misleading advertisements. (D.I. 1 ¶¶ 108–18). On January 26, 2024, Plaintiff and InfuSystem Holdings entered into a stipulated final judgment, which is "a final adjudication of all claims alleged by Pacira and Defendant InfuSystem in this action." (D.I. 37 at 4). Ventis, the sole remaining defendant, is incorporated in Delaware. Its principal place of business is in Newport Beach, California. (D.I. 28 at 2).

## II.  LEGAL STANDARD

A district court may, for the convenience of parties and witnesses, "transfer any civil action to any other district or division where it might have been brought" if transferring would be "in the interest of justice." 28 U.S.C. § 1404(a). "The burden of establishing the need for transfer . . . rests with the movant," and "the plaintiff's choice of venue should not be lightly disturbed." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995) (citation omitted).

A court considering a motion to transfer must first determine "whether the case could have been brought in the district to which the movant wishes to transfer." *Cisco Sys., Inc. v. Ramot at Tel Aviv Univ., Ltd.*, 2022 WL 16921988, at *3 (D. Del. Nov. 14, 2022) (citing *Jumara*, 55 F.3d at 878). If venue would have been proper in that district, the court must then determine whether the non-exhaustive list of public and private interest factors set forth in *Jumara* favors transfer. *Id.* at *3–4. To prevail, the movant must show that "the balance of convenience of the parties is strongly in favor" of transfer. *Paycom Software, Inc. v. Travelers Cas. & Sur. Co. of Am.*, 2022 WL 1063845, at *2 (D. Del. Apr. 8, 2022) (quoting *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970)).

The private interests include: (1) plaintiff's forum preference as manifested in the original choice; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum). *Jumara*, 55 F.3d at 879. The public interests include: (7) the enforceability of the judgment; (8) practical considerations that could make the trial easy, expeditious, or inexpensive; (9) the relative administrative difficulty in the two fora resulting from court congestion; (10) the local interest in deciding local controversies at home; (11) the public policies of the fora; and (12) the familiarity of the trial judge with the applicable state law in diversity cases. *Id.* at 879–80.

### III. DISCUSSION

#### A. Motion to Sever

Ventis asks that I sever InfuSystem Holdings from this case, arguing that InfuSystem Holdings was improperly joined. (D.I. 28 at 9–10). Plaintiff and InfuSystem Holdings entered into a stipulated final judgment on January 26, 2024. (*See* D.I. 37). Plaintiff thus no longer asserts any claims against InfuSystem Holdings. Ventis's motion to sever is therefore DISMISSED as moot.

#### B. Motion to Transfer

First, I consider whether there is jurisdiction in the transferee court. *See Jumara*, 55 F.3d at 878–79. A district court may only transfer an action to a "district or division where it might have been brought." 28 U.S.C. § 1404(a). Ventis argues that this case could have been brought in the Central District of California. (D.I. 28 at 11). Ventis contends that venue is proper in that

district because Ventis resides there and because Plaintiff's claim arose there. (*Id.*). Plaintiff does not contest that it could have brought this action in the Central District of California. Because Ventis's principal place of business is in the Central District, I conclude that there is jurisdiction in the transferee court. I thus turn to the private and public factors from *Jumara*.

### 1. Plaintiff's Forum Preference

Ventis argues that Plaintiff's choice of forum should be given "minimal weight" because Delaware is not Plaintiff's principal place of business. (D.I. 28 at 13–14). Ventis contends that Plaintiff has "no facilities, operations, employees, or presence in Delaware." (*Id.* at 14 (quoting *Memory Integrity, LLC v. Intel Corp.*, 2015 WL 632026, at *3 (D. Del. Feb. 13, 2015))). Ventis argues that Plaintiff has no connection to Delaware other than incorporation. (D.I. 50 at 6).

Plaintiff argues that its choice to litigate in Delaware weighs against transfer. (D.I. 46 at 4). Plaintiff disagrees that having a principal place of business elsewhere supports transfer. (*Id.*). Plaintiff contends that argument only applies to foreign entities. (*Id.* (citing *VLSI Tech. LLC v. Intel Corp.*, 2018 WL 5342650, at *4–5 (D. Del. Oct. 29, 2018))).

A plaintiff's choice is generally given "paramount consideration in any determination of a transfer request." *Shutte*, 431 F.2d at 25. Here, Plaintiff's choice to sue in Delaware weighs strongly in Plaintiff's favor, though not as strongly as it would if Plaintiff had its principal place of business in Delaware. *See Signal Tech, LLC v. Analog Devices, Inc.*, 2012 WL 1134723, at *2 (D. Del. Apr. 3, 2012). The record shows that Plaintiff maintains its principal place of business in Florida, and it does not have offices in Delaware. (D.I. 29 ¶¶ 3, 5). Accordingly, Plaintiff's choice will be given paramount consideration, but it will not carry the same weight in the balancing of factors as would a similar decision by a plaintiff with a principal place of business in Delaware. *Cf. Memory Integrity*, 2015 WL 632026, at *3 ("The court agrees, in part,

with Intel's position and concludes that Memory Integrity cannot reap the full benefits of heightened deference as a result of its minimal connection to Delaware.").

### 2. Ventis's Preference

Ventis argues that its preference to litigate in the Central District of California weighs in favor of transfer. (D.I. 28 at 15). Ventis contends that its headquarters and principal place of business are in the Central District, its witnesses are there, and most of the relevant evidence is there. (*Id.*). Plaintiff responds that Ventis's choice to litigate in the Central District of California is entitled to less weight than Plaintiff's choice of forum. (D.I. 46 at 5).

I think Ventis has legitimate and rational reasons for its forum preference given that its principal place of business is in the Central District of California. This factor, however, is not given the same weight as Plaintiff's preference. *Intell. Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744, 755 (D. Del. 2012).

### 3. Where the Claim Arose

Ventis argues this factor weighs in favor of transfer because Plaintiff's false advertising claim arose in California. (D.I. 28 at 15). Ventis contends that Plaintiff's claim challenges Ventis's advertising about Endura-KT, which is manufactured in California. (*Id.*). Plaintiff argues that its claim arose throughout the country, as "Ventis placed its false and/or misleading statements on the internet or in nationwide advertising campaigns." (D.I. 46 at 5).

Although Ventis focuses on the manufacturing of Endura-KT in California, the relevant claim is Plaintiff's claim that Ventis makes false advertisements about Endura-KT. The purportedly false advertisements largely appear on Ventis's website. (*See* Hearing Tr. at 6:5–22). The advertising is thus accessible all over the United States. *See Puff Corp. v. KandyPens, Inc.*, 2020 WL 6318708, at *3 (D. Del. Oct. 28, 2020) ("False advertising and deceptive trade

5

practice claims, however, arise where a customer is misled by the challenged conduct."). This factor is neutral.

### 4. Convenience of the Parties

Ventis argues that litigating in the Central District of California would be convenient for the parties. (D.I. 28 at 16–17). Ventis contends that its only two employees are in the Central District of California. (*Id.* at 16). Ventis thus argues that litigating in Delaware rather than in California would put a disproportionate burden on its business operations. (*Id.*). Ventis further argues that litigating in the Central District of California would be convenient for Plaintiff, whose largest location in the United States is roughly two hours by car from the Central District. (*Id.*). Lastly, Ventis argues that its size and financial condition favor transfer. (*Id.* at 17).

Plaintiff argues that the convenience of the parties does not weigh in favor of transfer, as "Ventis fail[ed] to demonstrate that litigating in Delaware would cause an exceptional or unexpected burden." (D.I. 46 at 5–6). Plaintiff disagrees with Ventis's argument about financial and logistical burdens, as "most of the discovery will occur elsewhere even though trial will be held in Delaware." (*Id.*).

In assessing the convenience of the parties, I consider "(1) the parties' physical location; (2) the associated logistical and operational costs to the parties' employees in traveling to Delaware (as opposed to the proposed transferee district) for litigation purposes; and (3) the relative ability of each party to bear these costs in light of its size and financial wherewithal." *Memory Integrity*, 2015 WL 632026, at *4 (citation omitted).

Here, Ventis's headquarters are in the Central District of California. Plaintiff's principal place of business is not located close to either forum. Neither forum is convenient for Plaintiff. "It is unreasonable to subject all parties to an inconvenient forum when a forum exists that would

6

significantly reduce the burden of at least one of the parties." *Ithaca Ventures k.s. v. Nintendo of Am. Inc.*, 2014 WL 4829027, at *4 (D. Del. Sept. 25, 2014). Ventis only has two employees. (D.I. 30 ¶ 7). Its gross profit in 2023 was $132,174.28; its net income for 2023 was -$691,193. (D.I. 58 ¶¶ 7–8). Plaintiff is larger in size and has significantly more revenue than Ventis. (*See, e.g.*, D.I. 29-1 at 3 of 152 ("Pacira posted record revenues of $667 million in 2022 – a 23% increase over 2021.")). On the one side—a start-up with two employees and little to no revenue; on the other side—an established company with more than half a billion dollars in revenue. It seems painfully obvious that litigating the case 3,000 miles from home should put the start-up at a significant disadvantage. Based on these facts, it is substantially more convenient for Ventis to litigate where its principal place of business is located. I thus think this factor weighs strongly in favor of transfer.

### 5. Convenience of the Witnesses

Ventis argues that litigating in the Central District of California would be convenient for witnesses. (D.I. 28 at 16–17). Ventis identifies three third-party witnesses: Nubratori's CEO, Nubratori's COO, and an independent contractor. (D.I. 29 ¶ 18). Ventis contends that the witnesses are located in California and outside the District of Delaware's subpoena power. (D.I. 28 at 16). Ventis argues that Plaintiff will likely not have witnesses in Delaware, as its principal place of business is in Florida and Plaintiff does not have offices in Delaware. (*Id.* at 17).

Plaintiff argues that the convenience of the witnesses does not weigh in favor of transfer, as Ventis has not shown that any of its witnesses would be unavailable at trial. (D.I. 46 at 6).[3]

---

[3] Ventis replies, "[Plaintiff] glosses over the fact that Ventis would be deprived of this Court's subpoena power for two of Ventis' already identified crucial third-party witnesses, one of which manufactures and assists with the marketing of Endura-KT." (D.I. 50 at 7).

Plaintiff argues that "mere convenience does not elevate Ventis's choice [of] forum over [Plaintiff's]." (*Id.* at 7).

Under Third Circuit law, district courts consider the convenience of witnesses "only to the extent that the witnesses may actually be unavailable for trial in one of the fora." *Jumara*, 55 F.3d at 879; *see also Smart Audio Techs., LLC v. Apple, Inc.*, 910 F. Supp. 2d 718, 732 (D. Del. 2012) (stating that this factor applies only insofar as "a witness actually will refuse to testify absent a subpoena"). In addition, "witnesses who are employed by a party carry no weight," because "each party is able, indeed, obligated to procure the attendance of its own employees for trial." *Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 203 (D. Del. 1998).

Here, Ventis's third-party witnesses largely reside in the Central District of California. Plaintiff has not named any witnesses who reside in Delaware, or who reside within 100 miles of the courthouse in Wilmington. For any other potential witnesses of Plaintiff, testifying in either Delaware or California would be inconvenient. I think this factor is thus neutral. Although the bulk of non-expert witnesses are more likely to reside in the Central District of California than anywhere else, and there may be relevant witnesses who are subject to the subpoena power of that district but not of the District of Delaware, Ventis has not shown that any of the named third-party witnesses would refuse to testify in Delaware.

### 6. Location of Books and Records

Ventis argues that the location of books and records favors transfer. (D.I. 28 at 17–18). Ventis contends that its computers, servers, and documents are either in, or accessed from, the Central District of California. (*Id.* at 17). Ventis contends that it does not maintain any records in Delaware. (*Id.*). Ventis further argues that Plaintiff will likely not have many documents to produce because this litigation focuses on Ventis's advertising. (*Id.* at 17–18).

8

Plaintiff contends that this factor focuses on whether evidence can be produced elsewhere, not where the evidence is. (D.I. 46 at 7). Plaintiff argues Ventis has not pointed to any evidence that could not be produced in Delaware. (*Id.*). Because Ventis "surely maintains" records electronically, Plaintiff argues that such records could easily be produced in Delaware. (*Id.*).[4]

Although it may not be difficult to produce relevant records in Delaware in light of modern technology, this factor cannot be ignored. *See In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1224 (Fed. Cir. 2011). I think this factor marginally favors transfer, but it is given very minimal weight.

### 7. Enforceability of the Judgment

Ventis argues that the enforceability of a potential judgment favors transfer, as Plaintiff seeks injunctive relief against a California resident regarding activities that "overwhelmingly" occur in California. (D.I. 28 at 18). Ventis contends the facility that manufactures Endura-KT is located in California, and the facility's owner cannot be sued in Delaware. (*Id.*). Plaintiff argues that its requested relief is not limited to California. (D.I. 46 at 8).[5]

I think this factor is neutral. "This factor can favor transfer when a defendant resides in the transferee forum and plaintiff seeks injunctive relief that will restrain his activities there." *Perma-Liner Indus., LLC v. D'Hulster*, 2021 WL 951185, at *4 (D. Del. Mar. 12, 2021). Plaintiff seeks injunctive relief related to Ventis's advertisements. Thus, while the facility that

---

[4] Ventis contends, "It is also of no consequence that much of the discovery and document production in this case is likely to be electronic." (D.I. 28 at 18).

[5] Ventis replies, "It is undisputed that Ventis resides in California, that Ventis' marketing is created and approved in California, and that Pacira seeks injunctive relief over a California headquartered company." (D.I. 50 at 8).

9

manufactures Endura-KT is located in California, a finding of false advertising would not affect the facility's ability to continue manufacturing Endura-KT. A judgment would not disproportionately affect Ventis's activities in California.

### 8. Practical Considerations

Ventis argues that trying this case in Delaware would be less practical than trying it in California. (D.I. 28 at 18–19). Ventis contends that the parties have ties to California, the Nubratori facility is located in California, and at least five Ventis witnesses are in the state. (*Id.* at 18). Plaintiff argues this factor does not weigh in favor of transfer because "Ventis fails to raise any public costs associated with litigating in Delaware." (D.I. 46 at 8).

I think practical considerations that could make the trial easy, expeditious, or inexpensive slightly favor the Central District of California. I assume litigation in the Central District of California would be less expensive for Ventis, as its principal place of business is in the same district. Plaintiff is not located close to either forum, so any travel for Plaintiff would be inconvenient, and the expense of trial will likely be comparable in either location.

### 9. Court Congestion

Ventis argues that the District of Delaware is more congested than the Central District of California. (D.I. 28 at 20). Ventis, referring to the Federal Court Management Statistics, contends that the District of Delaware had more weighted filings and more pending cases than the Central District of California for the twelve-month period ending June 30, 2023. (*Id.*). Ventis contends that from filing to trial, cases remain pending for an average of 36.7 months in the District of Delaware, compared to 27.8 months in the Central District of California. (*Id.*).

Plaintiff argues, "The weighted filing statistics that Ventis cites are not disparate enough to favor transfer."[6] (D.I. 46 at 10). Plaintiff contends that I have "previously concluded that this factor did not favor transfer when a movant presented even *more* disparate statistics between two proposed forums." (*Id.*).

The relative administrative difficulty due to court congestion is difficult to assess. Ventis cites statistics suggesting greater court congestion in Delaware than in the Central District of California. I do not think those statistics are helpful in predicting what would happen with this particular case, either in Delaware or in the Central District of California. I treat this factor as neutral.

### 10. Local Interest

Ventis argues that the local interest weighs in favor of transfer whenever "the cause of action calls into question the work and reputation" of a company in California. (D.I. 28 at 19). Ventis argues, "California has significant local interest in cases that determine what its companies can and cannot say in relation to activities that are occurring in California." (*Id.*). Ventis contends that in addition to passing FDA inspections, the Nubratori facility must pass California Board of Pharmacy inspections. (*Id.*). Plaintiff argues that Ventis failed to show that California has a local interest in this case, as Lanham Act claims are federal. (D.I. 46 at 8).

I think this factor is neutral. I do not think that federal Lanham Act claims give rise to local controversies or implicate local interests. Ventis's purportedly false advertising can be viewed online across the United States.

---

[6] Ventis cites to *Blackbird Tech LLC v. TuffStuff Fitness, Int'l, Inc.*, 2017 WL 1536394 (D. Del. Apr. 27, 2017), in its reply. Ventis contends that relative to the present case, the court in *Blackbird* relied on a shorter median time for disposition and a shorter median time from filing to trial to conclude that the congestion factor weighed slightly in favor of transfer. (D.I. 50 at 10).

11

### 11. Public Policy

Ventis argues that this factor is neutral or inapplicable. (D.I. 28 at 20). Plaintiff responds that "public policy encourages Delaware corporations to resolve disputes in Delaware." (D.I. 46 at 10).

Delaware's public policy "encourages the use by Delaware corporations of Delaware as a forum for the resolution of business disputes." *Signal Tech*, 2012 WL 1134723, at *4. This, however, generally, applies to the use of Delaware's state courts, including the "highly-respected Court of Chancery," to resolve disputes of Delaware law. *See Wacoh Co. v. Kionix Inc.*, 845 F. Supp. 2d 597, 604 n.9 (D. Del. 2012). Plaintiff brings a false advertising claim, which is resolved in the same manner under federal law in the District of Delaware and in the Central District of California. This factor is thus neutral.

### 12. Familiarity with State Law

Ventis contends this factor is neutral or inapplicable. (D.I. 28 at 20). Plaintiff does not address this factor. (*See generally* D.I. 46). I think this factor is neutral, as Plaintiff's Lanham Act claim involves federal law.

## IV. BALANCING OF FACTORS

Thus, of the twelve *Jumara* factors, four weigh in favor of transfer, one weighs against transfer, and seven are neutral. Having considered the factors in their totality and treated Plaintiff's choice of this forum as a paramount consideration, I nevertheless conclude that Ventis has demonstrated that the *Jumara* factors weigh strongly in favor of transfer. I therefore think the better exercise of discretion is to transfer this case.

## V. CONCLUSION

For the foregoing reasons, Ventis's motion to transfer venue is GRANTED. This case will be transferred to the Central District of California.

Ventis's motion to sever is DISMISSED as moot. Plaintiff's motion for a preliminary injunction (D.I. 13) and Ventis's motion to dismiss (D.I. 22) are DISMISSED with leave to renew in the Central District of California. Ventis's motion for sanctions (D.I. 60), which is not fully briefed, is DISMISSED with leave to refile as permitted by any Local Rules or Standing Orders in that District.

IT IS SO ORDERED.

Entered this 23rd day of August, 2024

United States District Judge